## Reno v. Reno

*John H. Bonin,* for libellant.

VALENTINE, P. J., January 29, 1943.—The master has recommended a divorce upon the ground of wilful and malicious desertion. The pivotal finding of fact is as follows:

"Your master finds as a fact that respondent, Anna Reno, on January 11, 1940, wilfully and maliciously and without reasonable cause, deserted libellant, John Reno, and absented herself from their habitation and has continued in said desertion during the term and space of two years and upwards, to wit, from January 11, 1940, thence hitherto and contrary to the wishes of libellant and without his consent."

The details of the alleged desertion appear from the testimony of libellant, who is without corroboration. The essential features of libellant's testimony are as follows:

"Q. Will you proceed and tell us how on January 11, 1940, you came home . . . first, of all, had you worked that day?

A. Yes, I did.

Q. What time did you come home about?

A. 9:30 in the evening.

Q. When you arrived home, what did you experience?

A. I stumbled over my clothes in the dark. They were out on the porch.

Q. Did you rap at the door?

A. Yes.

Q. When you rapped, was there any response?

A. 'No room for you here.'

Q. Who said that?

A. She said it.

Q. Did you recognize that voice?

A. Yes.

Q. Was there a light on in the house?

A. No, but when she came downstairs, she put it on.

Q. Did you make an effort to open the door?

A. Yes, I did, but when I saw it was locked I didn't want to trouble the neighbors, so I went to the Hazleton Hotel.

Q. Where did you take your clothes?

A. To the Hazleton Hotel. I slept there.

Q. What is the address of the Hazleton Hotel?

A. Corner of Wyoming and Broad Streets.

Q. Have you lived there ever since?

A. That's right.

Q. Had your wife ever put you out of the house before that or barricaded the doors against you?

A. Yes, about 17 or 18 times before that I slept in the Hazleton Hotel.

Q. Would it generally be when you came home from work?

A. That's right.

Q. Can you give us any reason why she should have acted this way?

A. Well, she said I treated her too rough, and I used to raise Cain with her when she came in late at nights.

. . .

Q. On the 11th of January, 1940, you say you came home from work about 9:30 P. M. . . .

A. No. I didn't come home from work then. I was at the show and came home to go to bed.

Q. So that you had been home that day. Did you have any quarrel that day?

A. Yes, when I came home from work. She came home at 2 o'clock that morning, or about 20 minutes after 2.

Q. Was there any fighting?

A. I didn't hit her, but I shoved her against the door.

Q. What did she say then?

A. She started cursing and swearing, so I went out and came in at 9:30, and she wouldn't open the doors.

. . .

Q. Have you since January 11, 1940, remained separate and apart from your wife?

A. Yes. I have lived steadily at the Hazleton Hotel.

Q. Where has your wife lived during this time?

A. She's lived at the same residence from which she closed the doors to me.

Q. Have you lived with her since that time?

A. No, sir.

Q. Has she continued to refuse to live with you during approximately three years?

A. That is correct. We have not lived together since that time and have very seldom spoken to each other, although I see her still late at night occasionally, and others tell me that she is seen in barrooms at 2 and 3 o'clock in the morning."

The evidence shows a separation of the parties following the removal of libellant from the home, but does not establish a wilful and malicious desertion on the part of the wife. To warrant a decree the evidence should be clear and convincing. Libellant's testimony shows that the parties had frequently separated under similar conditions. Libellant fixed the prior occasions at "about 17 or 18" in number. He elected to treat this particular separation as continuous. He made no effort to effect a reconciliation. There is no testimony as to

the removal of any articles by him other than the clothes which he says he found on the porch.

Although it is said in Hartner v. Hartner, 75 Pa. Superior Ct. 342, at page 344, that constructive desertion is a term unknown in our law, some authorities apparently recognize it as a ground for divorce: O'Keefe v. O'Keefe, 69 Pitts. L. J. 235; Reber v. Reber, 5 Berks 237; Johnson v. Johnson, 27 Dist. R. 1014. However, in order to constitute constructive desertion, the turning out of doors must be by actual violence or a reasonable apprehension of it: Strang v. Strang, 11 D. & C. 300; Border v. Border, 21 Dist. R. 749. In the Strang case a decree was refused. In the Border case the proceedings were recommitted to the master.

An examination of the cases in which divorces have been granted upon the ground of desertion, where libellant was turned out of doors, reveals that in nearly every case the testimony established more than was proved in the case before us. In Krebs v. Krebs, 109 Pa. Superior Ct. 175, the husband, who had compelled libellant to leave, immediately broke up the home and thereafter made no offer to furnish her with a home. In O'Keefe v. O'Keefe, supra, it appeared that libellant, who allegedly had been driven out of the home by his wife, frequently requested her to resume marital relations, but she refused. In Reber v. Reber, supra, the court said at page 240:

"It may be accepted, therefore, that the credibility of her testimony on the vital parts of her case is not devoid of some support in the proven facts of the case. Nor is there any apparent reason for doubting her statement that the respondent's desertion of her, begun as she details, has since continued."

Here the nearest approach to corroboration is furnished by a witness who testified:

"Q. Is it your opinion that Mrs. Reno wilfully and maliciously deserted Mr. Reno?

A. That's true."

Manifestly expert or opinion evidence has no place in such a proceeding.

In Smith v. Smith, 4 Dist. R. 397, Judge Stewart, afterwards a Supreme Court justice, said:

"The libellant in this case is the husband, and the ground on which the divorce is asked is constructive desertion by the wife. In point of fact the husband separated from the wife by withdrawing from her home. He says that he did this unwillingly, and only when ordered to do so by his wife, who owned the house, and told by her that, unless he went, she would find some way to compel his withdrawal. His leaving under such circumstances would not constitute a constructive desertion by the wife, nor is the case strengthened to any considerable degree by the other complaints set out in the libel touching the conduct of the wife."

In Magee v. Magee, 4 Lehigh 404, it appears that the husband had withdrawn from the home. Judge Trexler, later President Judge of the Superior Court, said:

"The facts did not justify his leaving her. Her telling him to go, and stating that she would not live with him were not sufficient. He was the master of the family and was not required to take orders from his wife. Even where the wife owns the house such facts do not establish a constructive desertion."

In Lentz v. Lentz, 13 Lehigh 54, a divorce upon the ground of desertion was refused the husband where the testimony disclosed that there had been certain separations and reconciliations and that the wife sent libellant's clothing to his place of business with a note that he should never enter her door, and that thereafter the parties did not live together and had no communications of any kind for the purpose of reconciliation.

We are of the opinion that a decree should not be predicated upon the meager uncorroborated testimony of libellant contained in the record, and conclude in line with the decisions in Buys v. Buys, 56 Pa. Superior Ct., 338, Barnes v. Barnes, 21 D. & C. 101, and Conn v.

Conn, 111 Pa. Superior Ct. 130, that libellant has not met the burden upon him.

A decree is refused and the libel dismissed.